Hillsborough, } No. 3531.
June 5, 1945. }

ELIAS ROBBINS, *Adm'r v.* ETHEL GREEN.

*McLane, Davis & Carleton (Mr. Robert P. Bingham* orally), for the plaintiff.

*Maurice F. Devine* (by brief and orally), for the defendant.

MARBLE, C. J.    The accident occurred near the plaintiff's cottage on the shore of Darrah Pond in Litchfield.    Adjoining this cottage on the south was the Talent cottage (owned by the defendant's father), in which the defendant and her son, two and a half years old, were staying for the summer.    Situated a short distance east of these cottages was a long building (designated in the evidence as house A) with steps on its southwesterly side facing the southerly end of the Talent cottage.

There were some thirty cottages in the immediate vicinity, and the area between house A and the Robbins and Talent cottages afforded ready access to the beach.    This area was much frequented by the children of the cottagers, and the defendant knew that children were likely to be playing there.

Shortly before the accident the defendant had driven along the westerly edge of this area on her return to the Talent cottage from a marketing trip to Nashua.    She stated that as she turned the sharp corner to enter the area from the road she looked for children but saw none.    According to her evidence, she stopped her car with the rear door about opposite the kitchen entrance and took her purchases inside, where she remained for ten or fifteen minutes before returning to the car.

She testified: "My son was in the house with me, and he went with me to put the car away, and he walked around the back of the car to the right rear door and went to climb in, and I took him and put him in the front seat of the car."

She stated that she then drove forward about twenty feet when she heard Mrs. Robbins, the mother of the plaintiff's intestate, scream, "Oh, my baby," that she stopped the car immediately and got out, and that the Robbins child was then lying behind the right rear wheel and about three feet to the right. She declared that before she started to drive away from the cottage she looked to see if any children were in sight.

In answer to an inquiry as to whether her son was in the house when she arrived or came in during the ten minutes that she was there, she stated definitely and repeatedly that he was in the house.

Mrs. Robbins testified in part as follows: "At that particular time my niece of thirteen was staying with me, and I had left her in charge of my baby and Mrs. Green's [the defendant's] baby down by the foot of the stairs to watch them. . . . I went down and told my niece she could go because I would take my baby with me swimming. I no sooner discharged her than I remembered I didn't have my bathing cap, and I walked around the cottage to get the cap. . . . [The defendant's car] came up around the bend as I was coming into my cottage. . . . It landed at her cottage just about the time I landed by there, because I happened to notice that a man came out of the car, and she was going in with bundles."

She testified further that she found her bathing cap readily and had started back to the steps where the children had been playing when she saw her child lying back of the defendant's car, that she was gone only about five minutes "all told," and that the distance from the steps to the point where the child was found was about equal to the distance across the court room.

The jury could properly find that both children were at or near the steps and unattended when the defendant arrived. Attention is called to the following excerpt from Mrs. Robbins' testimony: "Q. Did you say that the Green child was playing with your baby, or at least playing at the same place, when you left them? A. Yes. It was just previous to that, within a very short time. They had been playing right near my cottage, and Mrs. Green's father was there, and I said, 'Why don't we put them down further because the bees are quite thick, and Judith, my niece, can watch them.' . . . Q. Is there any question in your mind but what the Green baby was

down there with your baby? A. There is no question. That baby was down there with my baby."

As already noted, Mrs. Robbins testified that she had "discharged" her niece before discovering that she had forgotten her bathing cap. The defendant's father did not testify. Indeed, the only persons to take the witness stand were Mrs. Robbins and the defendant.

If the sketch used in oral argument is substantially correct, the steps were not more than thirty or forty feet from the bend which the defendant rounded as she entered the area and were directly in her line of vision. The evidence authorized a finding that if she looked as carefully as she said she did, she must have seen the children. *Lafountaine* v. *Moore*, 90 N. H. 258, 260, and cases cited.

Her assertion that she remained ten or fifteen minutes in the cottage and that her son was there during all that time could, on the plaintiff's evidence, be deemed untrue. And it is not important whether she was alone in the automobile when she started forward or whether she had encountered her son outside the cottage and placed him on the seat beside her. In either event it could be found that she knew or should have known that the Robbins child might be in the immediate vicinity and that she failed to exercise the care to discover his whereabouts which the situation reasonably required (*Bouley* v. *Company*, 90 N. H. 402, 403, 404, and cases cited), and that her negligence in this respect was causal.

*Judgment on the verdict.*

All concurred.